**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Michael L. Larkin

    v.                                Civil No. 19-cv-102-LM

Strafford County Department
of Corrections Superintendent
Christopher Brackett et al.[1]

**REPORT AND RECOMMENDATION**

Pro se plaintiff, Michael L. Larkin, has filed a complaint (Doc. No. 1), with attachments, and several addenda to the complaint (Doc. Nos. 12, 13, 14), alleging violations of his federal rights during his detention at the Strafford County Department of Corrections ("SCDOC"), where he has been in the custody of the U.S. Marshals Service ("USMS") pending the disposition of his federal criminal case in the District of Maine, United States v. Larkin, No. 2:18-cr-00152-JDL (D. Me.).[2]

---

[1]Defendants named in this action in both their individual and official capacities are Strafford County Department of Corrections ("SCDOC") Superintendent Christopher Brackett; SCDOC Assistant Superintendent of Security Robert Hayden; SCDOC Assistant Superintendent of Administration Gwen Weisgarber; Strafford County Sheriff David Dubois; Strafford County Commissioners Leo E. Lessard, Robert J. Watson, Raymond F. Bower, and George Maglaras; and Strafford County.

[2]Larkin, who filed this action in January 2019 while in pretrial detention, pleaded guilty in his criminal case in February 2019, see Feb. 20, 2019 Change of Plea, United States

Larkin's complaint documents are before the court for preliminary review pursuant to 28 U.S.C. § 1915A and LR 4.3(d)(1).  Also before the court is a motion to update the docket to add the names of the individual Strafford County Commissioners as defendants (Doc. No. 15), and two motions for injunctive relief (Doc. Nos. 12, 14) that have been referred to the undersigned magistrate judge for a Report and Recommendation.  See Mar. 14, 2019 Order; June 4, 2019 Order.

## Preliminary Review

I.    Preliminary Review Standard

The court conducts a preliminary review of inmate complaints filed in forma pauperis.  See LR 4.3(d)(1); see also 28 U.S.C. §§ 1915(e)(2), 1915A.  Claims may be dismissed, sua sponte, if, among other things, the court lacks jurisdiction, a defendant is immune from the relief sought, or the complaint fails to state a claim upon which relief may be granted.  See 28 U.S.C. §§ 1915(e)(2), 1915A(b)(1); LR 4.3(d)(1)(A).  In considering whether the pro se complaint states a claim, the court construes the pleading liberally, see Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and then determines

---

v. Larkin, No. 2:18-cr-00152-JDL (D. Me.) (ECF No. 39).  Larkin currently remains at the SCDOC in USMS custody awaiting his sentencing.

whether, stripped of legal conclusions, and with all reasonable inferences construed in plaintiff's favor, the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief'" upon which relief can be granted. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

II.  Background

     A.   Restrictions on Incoming Mail & Print Publications

     Larkin asserts that since 2017, SCDOC policies, purporting to target incoming mail as a conduit for the introduction of drugs or other contraband into the SCDOC, and to promote the safety and security of the institution, severely restrict inmates' access to mail. Larkin asserts that, except for SCDOC detainees under the jurisdiction of Immigration and Customs Enforcement ("ICE"), SCDOC inmates are not allowed to receive personal letters, cards, photos, print copies of magazines, newsletters, or newspapers through the mail. Larkin asserts that when incoming mail prohibited by that policy arrives at the SCDOC, the mail is either returned to the sender, destroyed, or held until the inmate is released. Pursuant to the relevant SCDOC policies, inmates do not receive any notice, or have any opportunity to be heard, when incoming mail addressed to them is rejected, withheld, or returned.

     SCDOC policies treat incoming legal mail, court mail, or

other "privileged" mail from attorneys or government offices differently than personal mail and print publications.  Pursuant to SCDOC policies and/or consistent practices, officers routinely open envelopes containing privileged mail and, in every instance, make copies of the originals for distribution to the inmate before shredding the originals.  Id. at 5.

Larkin further asserts that his criminal attorney has mailed Larkin one or more flash drives containing confidential documents relating to his criminal case.  SCDOC personnel have opened each envelope containing such flash drives and have inspected the contents of the flash drives, outside of Larkin's presence, before delivering the flash drives to Larkin.


B.   March 19 Search of Flash Drive and Seizure of Radio

Larkin asserts that on March 19, 2019, defendant Capt. Robert Hayden and several other SCDOC corrections officers ("COs") searched Larkin's cell and confiscated his radio and a flash drive containing all of his legal files relating to his criminal case and to this civil case, in which Hayden is named as a defendant.  Larkin asserts that the officers claimed that radios are no longer allowed at the SCDOC, as the batteries are considered to be contraband, but Larkin questions that rationale as radios are still sold at the SCDOC, some inmates still have radios, and inmates in his unit have access to a battery-powered

4

television remote control.

Capt. Hayden told Larkin on March 19, 2019 that the officers were taking his flash drive to inspect it for "inappropriate material." Larkin further alleges that during the several days the officers had his flash drive, he was unable to prepare and file a supplemental pleading in this case challenging the seizure of his radio and flash drive and could not submit exhibits for consideration in the presentence investigation in his criminal case.

### C. March 23 Limit on Larkin's Access to J-2 Unit Laptop

Larkin asserts that on March 23, 2019, he was denied access to a laptop, which had been generally available to Larkin and other inmates on his unit for legal work. A CO told Larkin that the reason for the loss of access was that officers had found "porn" on the laptop. Larkin asserts that he needed the laptop to access the legal files on his flash drive, and that due to his custody status and housing assignment, he could not use the computers in the SCDOC library.

## III. Claims

Construed liberally, the complaint and complaint addenda (Doc. Nos. 1, 12, 13, 14) assert the following claims for relief under 42 U.S.C. § 1983:

1.   The SCDOC policy prohibiting inmates from receiving and possessing print copies of magazines and newspapers violates inmates' First Amendment rights to have access to such print materials while incarcerated.

2.   The SCDOC policy that prohibits Larkin and other inmates from receiving personal letters or photos through the mail:

    a.   Violates the inmates' First Amendment rights; and

    b.   Violates Larkin's Fourteenth Amendment right to equal protection, in that the restriction on the receipt of personal mail does not apply to ICE detainees at the SCDOC.

3.   The SCDOC policy or practice of not providing notice or an opportunity to be heard when letters addressed to inmates are withheld, deprives Larkin and other inmates of procedural due process, in violation of the Fourteenth Amendment.

4.   The SCDOC policy or practice of shredding the originals of court mail, legal mail, and other privileged mail, and providing inmates with only a photocopy of that mail, violates Larkin's right of access to the courts.

5.   The conduct of unnamed SCDOC officers in inspecting one or more flash drives sent to Larkin as legal mail from his criminal attorney violated Larkin's right to counsel under the Sixth Amendment, as such inspections occurred outside of Larkin's presence, without his consent, and unjustifiably interfered with confidential communications between Larkin and his criminal defense counsel.

6.   Defendant Capt. Hayden and other unnamed SCDOC officers who seized Larkin's radio and flash drive during a March 19, 2019 cell search violated Larkin's federal rights, in that:

    a.   Confiscating Larkin's radio and flash drive were adverse acts taken in retaliation for Larkin's exercise of his First Amendment right to petition the government for redress of grievances by filing this lawsuit and administrative grievances;

    b.   Confiscating the flash drive violated Larkin's

right of access to the courts, in that Larkin could
not work on his civil or criminal cases without the
flash drive; and

c.   Inspecting the contents of the flash drive
outside of Larkin's presence violated Larkin's right
to confidentiality in his legal work.

7.   By denying Larkin's request to use a laptop on March
23, 2019, defendants violated Larkin's right of access to
the courts.

## IV.   Discussion

### A.   Personal Mail & Publications (Claims 1, 2(a))

A restriction on the mail an inmate may receive and the
publications an inmate may possess in prison implicates the
First Amendment.  See Beard v. Banks, 548 U.S. 521, 528 (2006);
Thornburgh v. Abbott, 490 U.S. 401, 407 (1989).  The SCDOC
policy prohibiting inmates from receiving print publications and
personal mail impinges on inmates' First Amendment free speech
rights.  Such an impingement violates the Constitution, unless
it was imposed pursuant to a prison policy that was "reasonably
related to legitimate penological interests, and [was] not an
exaggerated response to such objectives."  Beard, 548 U.S. at
528 (internal quotation marks and citations omitted); Turner v.
Safley, 482 U.S. 78, 89 (1987).

Larkin alleges facts that state claims alleging a violation
of his First Amendment rights, in relation to the SCDOC policies
prohibiting inmates from receiving any personal mail or print

7

publications.  In an Order issued this date, the court has directed service upon Strafford County and the SCDOC Superintendent and has directed those defendants to file an answer or other response to Claims 1 and 2(a).

B.    Equal Protection (Claim 2(b))

The SCDOC policy of generally prohibiting inmates from receiving personal mail makes an explicit exception for inmates whose detention at the SCDOC is subject to the jurisdiction of ICE.  "The Fourteenth Amendment's Equal Protection Clause prohibits a state from treating similarly situated persons differently because of their classification in a particular group."  Mulero-Carrillo v. Román-Hernández, 790 F.3d 99, 105-06 (1st Cir. 2015) (citations omitted).

> Generally, for an equal protection claim to survive a
> motion to dismiss, a plaintiff must allege facts plausibly
> demonstrating that compared with others similarly situated,
> [the plaintiff was] selectively treated . . . based on
> impermissible considerations such as race, religion, intent
> to inhibit or punish the exercise of constitutional rights,
> or malicious or bad faith intent to injure a person.

Id. at 106 (internal quotation marks and citations omitted).

"An individual is 'similarly situated' to others for equal protection purposes when 'a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated.'"  Davis v. Coakley, 802 F.3d 128, 133 (1st Cir. 2015).  Different agencies may impose

different requirements on the SCDOC in connection with inmates
within their respective jurisdictions; Larkin has not alleged
any facts regarding whether ICE detainees and USMS inmates are,
for example, similarly-situated in their housing arrangements at
the SCDOC, their level of supervision, their access to communal
spaces, or the frequency with which ICE detainees, as opposed to
other SCDOC inmates, are detained for reasons related to the use
or distribution of controlled drugs, which could be relevant
considerations in deciding whether to allow them to receive
personal mail.  Larkin has thus failed to demonstrate that he is
similarly situated to the ICE detainees in all relevant
respects.  Accordingly, the district judge should dismiss Claim
2(b) for failure to state an equal protection claim upon which
relief can be granted.

     C.    <u>Rejection of Mail & Procedural Due Process (Claim 3)</u>

    To establish that his due process rights have been
violated, a plaintiff must demonstrate that he has suffered a
deprivation of a protected interest in life, liberty, or
property.  See <u>Mathews v. Eldridge</u>, 424 U.S. 319, 332 (1976).
"The test for a procedural due process violation requires the
plaintiffs to show first, a deprivation of a protected . . .
interest, and second, a denial of due process." <u>Pérez-Acevedo
v. Rivero-Cubano</u>, 520 F.3d 26, 30 (1st Cir. 2008).

Larkin asserts that the return of all inmate incoming mail without notice to the inmate deprives inmates, including Larkin, of a protected interest without due process.  Considering a case involving prison officials' rejection and return of mail sent by a lawyer to his client in prison, the Eighth Circuit concluded that the "case law is clear that an inmate has a right to procedural due process – including notice – whenever any form of correspondence addressed to that inmate is rejected." Bonner v. Outlaw, 552 F.3d 673, 678 (8th Cir. 2009).

> "[T]he interest of prisoners and their correspondents in uncensored communication by letter, grounded as it is in the First Amendment, is plainly a 'liberty' interest within the meaning of the Fourteenth Amendment even though qualified of necessity by the circumstance of imprisonment."

Id. at 676 (quoting Procunier v. Martinez, 416 U.S. 396, 418 (1974), overruled on other grounds by Thornburgh, 490 U.S. at 413-14).

Claim 3 survives preliminary review, to the extent it pleads the absence of any notice or opportunity to be heard when mail addressed to the inmate arrives at the SCDOC and is withheld or destroyed.  The Order issued this date directs service of Claim 3 upon the SCDOC Superintendent and Strafford County and directs them to file an answer or other response to Claim 3.

D.   Right of Access to Courts (Claims 4, 6(b), 7)

Larkin asserts access-to-courts claims (identified here as Claims 4, 6(b), and 7), regarding: the several-day seizure of his flash drive; the SCDOC policy of shredding the original documents contained within inmates' legal mail, court mail, or other privileged mail; and the restrictions on Larkin's ability to use a laptop in March 2019.  A prisoner asserting a denial of access to the courts claim must show an actual injury to a non-frivolous legal proceeding arising from the defendants' alleged conduct.  See Lewis v. Casey, 518 U.S. 343, 351 (1996).

Larkin does not allege any facts suggesting that he suffered any injury in any legal proceeding by not having access to the original documents that SCDOC officers shredded before giving him copies.  Larkin contends, however, that such injury is possible, as no exception is made for inmates who assert that their court cases require them to have access to the original documents.  Larkin's allegations in that regard are speculative, and do not give rise to an actionable claim of a denial of access to the courts.

Larkin further asserts that the several-day seizure of his flash drive and restriction on his access to a laptop delayed his filing of a supplemental pleading in this civil case and delayed his ability to submit documents for consideration in his presentence investigation in his criminal case.  "Mere 'delay in

11

being able to work on one's legal action or communicate with the courts,'" without more, "'does not rise to the level of a constitutional violation.'" Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003) (citation omitted).  Larkin has not alleged any facts demonstrating that he suffered any actual injury in this case or in his criminal case arising from the delayed access to his legal files.  Accordingly, the district judge should dismiss Larkin's access-to-courts claims, identified here as Claims 4, 6(b), and 7, for failure to state a claim upon which relief can be granted.

### E.   Inspection of Flash Drives (Claims 5, 6(c))

#### 1.   Opening of Legal Mail (Claim 5)

In Claim 5, Larkin alleges that on one or more occasions, unspecified SCDOC officers opened and inspected the contents of flash drives mailed to Larkin by his criminal defense counsel outside of Larkin's presence.  Larkin asserts the flash drives contained discovery and other confidential information relating to his criminal case.  "Given the special treatment accorded by many courts to mail sent by criminal or civil counsel, the long-established practice is to preserve the prisoner's interest in confidential communication by opening properly identified legal mail from counsel in the presence of the prisoner."  Anctil v. Fitzpatrick, No. 1:16-CV-00107-JAW, 2018 WL 6579153, at *14,

2018 U.S. Dist. LEXIS 210121, at *36 (D. Me. Dec. 13, 2018) (citing cases including Wolff v. McDonnell, 418 U.S. 539, 576–77 (1974)), R&R adopted, No. 1:16-CV-00107-JAW, 2019 U.S. Dist. LEXIS 20558, 2019 WL 501467 (D. Me. Feb. 8, 2019), appeal filed, No. 19-1308 (1st Cir. Mar. 28, 2019).  An inmate may state a constitutional claim of interference with his confidential communications with defense counsel if incoming legal mail is opened "with some regularity" outside of the inmate's presence. Gallant v. Delahanty, 43 F.3d 1456, 1994 WL 697283, at *2, 1994 U.S. App. LEXIS 35098, at *6 (1st Cir. Dec. 14, 1994) (unpublished); see also Mangiaracina v. Penzone, 849 F.3d 1191, 1196 (9th Cir. 2017) ("prisoners have a Sixth Amendment right to confer privately with counsel and . . . the practice of opening legal mail in the prisoner's presence is specifically designed to protect that right").  An "isolated incident of mail tampering is usually insufficient to establish a constitutional violation." Goord, 320 F.3d at 351.

At this stage of this case, Larkin has failed to plead facts demonstrating that the inspection of the flash drives contained within his incoming legal mail occurred at a frequency or manner that could be characterized as unjustifiable interference with his communications with counsel, in violation of his Sixth Amendment right to counsel.  This court cannot rule out the possibility, however, that Larkin could allege

13

additional facts to state a claim upon which relief can be
granted, as to particular defendants who are alleged to have
violated Larkin's rights.  Accordingly, Claim 5 as pleaded
should be dismissed without prejudice as insufficiently stated,
but in the Order issued this date, the court grants Larkin an
opportunity to move to amend the complaint to assert new facts
to state a claim upon which relief can be granted.

### 2.   March 19 Inspection of Flash Drive

Larkin asserts that Capt. Hayden and other COs searched
Larkin's cell on March 19 and seized a flash drive on which
Larkin stored records concerning his presentence investigation
and all of his legal work relating to this civil action, to scan
it for "inappropriate material."  The flash drive was returned
to Larkin several days later.

Larkin asserts that the inspection of the flash drive
outside of his presence violated his right to privacy in his
legal work.  Inmates in detention pending the outcome of their
criminal cases do not have a freestanding right to be present
when the property they maintain in their cells is subject to
search.  See Block v. Rutherford, 468 U.S. 576, 591 (1984); Bell
v. Wolfish, 441 U.S. 520, 557 (1979) ("given the realities of
institutional confinement, any reasonable expectation of privacy
that a detainee retained necessarily would be of a diminished

14

scope"). Cf. Hudson v. Palmer, 468 U.S. 517, 526 (1984)
(prisoners have no reasonable expectation of privacy in their
cells, as "[t]he recognition of privacy rights for prisoners in
their individual cells simply cannot be reconciled with the
concept of incarceration and the needs and objectives of penal
institutions"); Mitchell v. Dupnik, 75 F.3d 517, 523 (9th Cir.
1996) (inspection of pretrial detainee's legal papers in his
absence outside of his presence "does not 'present the type of
atypical, significant deprivation in which a state might
conceivably create a liberty interest'" (citation omitted)).
Under such circumstances, in Claim 6(c), Larkin has failed to
state a claim of a violation of any federal constitutional
right, and the district judge should dismiss that claim.

    F.   Retaliation (Claim 6(a))

    To state a First Amendment retaliation claim, an inmate
must allege: (1) that the conduct which led to the retaliation
was protected by the First Amendment; (2) that she or he
suffered adverse action at the hands of the prison officials;
and (3) that there was a causal link between the exercise of her
or his First Amendment rights and the adverse action taken. See
Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011). Although de
minimis adverse acts taken in response to protected speech are
not actionable, an adverse act is not de minimis if it would

15

deter an individual of ordinary firmness from exercising his or
her First Amendment rights.  See Starr v. Dube, 334 F. App'x
341, 342-43 (1st Cir. 2009).

Larkin asserts that the confiscation of his radio and
temporary seizure of his flash drive containing all of his legal
files were adverse acts taken in retaliation for his filing this
lawsuit and administrative grievances at the SCDOC.  An inmate
of ordinary firmness would not be deterred from engaging in
protected speech by the threat that a radio purchased in the
facility's commissary would be seized as contraband during a
cell search.  See Hurd v. Barnette, No. 6:15CV734, 2017 WL
892118, at *6, 2017 U.S. Dist. LEXIS 3191, at *15-*16 (E.D. Tex.
Mar. 6, 2017).  Furthermore, an inmate of ordinary firmness
would not be deterred from engaging in protected speech by the
threat of not having his legal material for a few days.  See
Scott v. Haney, No. CIV.A. 12-0439-JJB-DLD, 2012 WL 6569308, at
*3, 2012 U.S. Dist. LEXIS 178826, at *8 (M.D. La. Nov. 10, 2012)
(destruction of part of plaintiff's legal work following cell
search was de minimis), R&R adopted, 2012 WL 6569295, 2012 U.S.
Dist. LEXIS 177868, at *1 (M.D. La. Dec. 17, 2012).
Accordingly, the district judge should dismiss Claim 6(a).


        G.   Identity of Defendants

            1.   Supervisory and Municipal Liability

Plaintiff has named SCDOC supervisors and Strafford County as the defendants in this case.

> A supervisor may be held liable for the constitutional violations committed by his subordinates where "an affirmative link between the behavior of a subordinate and the action or inaction of his supervisor exists such that the supervisor's conduct led inexorably to the constitutional violation." A plaintiff can establish that "affirmative link" by alleging that the supervisor was "a primary violator or direct participant in the rights-violating incident," or that "a responsible official supervises, trains or hires a subordinate with deliberate indifference toward the possibility that deficient performance of the task eventually may contribute to a civil rights deprivation."

Morales v. Chadbourne, 793 F.3d 208, 221 (1st Cir. 2015) (citations omitted).

A county or other local government may not be held liable under 42 U.S.C. § 1983 for violating a plaintiff's federal constitutional rights under a theory of respondent superior. See Iqbal, 556 U.S. at 677. A plaintiff who brings a section 1983 action against a municipality "must identify a municipal policy or custom that caused the plaintiff's injury." Haley v. City of Boston, 657 F.3d 39, 51 (1st Cir. 2011) (citations and internal quotation marks omitted). "[W]hen execution of a [local] government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury," then "the government as an entity" may be held responsible under § 1983. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

### 2.   Brackett and Strafford County

Plaintiff names as defendants Strafford County and the SCDOC Superintendent Brackett in their individual and official capacities.  State law puts the responsibility for the day-to-day supervision of the SCDOC in the hands of the Superintendent. See N.H. Rev. Stat. Ann. ("RSA") § 30-B:4.  Larkin claims that Brackett issued the policies at issue in Claims 1, 2(a), and 3 that allegedly violated Larkin's First and Fourteenth Amendment rights.  Larkin further alleges facts regarding those policies that state claims of municipal liability under Monell.  In the Order issued this date, the court has directed service upon Strafford County and upon Brackett in his individual and official capacities, as to Claims 1, 2(a), and 3.

### 3.   Strafford County Commissioners

Larkin names the individual Strafford County Commissioners as defendants, points to their supervisory responsibilities under state law, and alleges that their names appeared on the letterhead that announced the SCDOC incoming mail policy at issue in Claims 1 and 2(a).  Under state law, the Commissioners are responsible for hiring and supervising the SCDOC Superintendent and for issuing County Department of Corrections policies.  See RSA § 30-B:6.  The presence of the Commissioners' names on letterhead and their obligations under state law,

18

without more, do not establish the requisite affirmative link
connecting each of them in their individual capacities with the
specific policies and practices that Larkin alleges violated his
federal rights.  Accordingly, the district judge should drop the
Commissioners as defendants and deny as moot Larkin's motion
(Doc. No. 15) to add their names to the list of defendants in
this action.

### 4.    SCDOC Assistant Superintendents

Plaintiff names Assistant Superintendents Capt. Robert
Hayden and Gwen Weisgarber as defendants in their individual and
official capacities.  As this R&R recommends dismissal of the
claims arising out of Capt. Hayden's search and seizure of
Larkin's property in March 2019, and no other specific
allegations in the complaint affirmatively link Capt. Hayden or
Weisgarber to any subordinate officers' unconstitutional
conduct, the district judge should drop Hayden and Weisgarber as
defendants.

### 5.    Strafford County Sheriff

Plaintiff names the Strafford County Sheriff as a
defendant, concluding that the Sheriff in New Hampshire has
supervisory authority over the SCDOC.  The SCDOC Superintendent,
however, and not the Strafford County Sheriff, is charged with

19

running the SCDOC, see RSA § 30-B:4, and no allegation in the
complaint suggests that any act or omission of the Sheriff
affirmatively linked him with any unconstitutional act at issue
in this case.  The district judge, accordingly, should drop the
Sheriff Dubois as a defendant.

### Preliminary Injunction Motions (Doc. Nos. 12, 14)

I.    Preliminary Injunction Standard

    "'A plaintiff seeking a preliminary injunction must
establish that he is likely to succeed on the merits, that he is
likely to suffer irreparable harm in the absence of preliminary
relief, that the balance of equities tips in his favor, and that
an injunction is in the public interest.'" Glossip v. Gross,
135 S. Ct. 2726, 2736 (2015) (citation omitted).  Irreparable
harm is a factor that weighs heavily in the analysis. Voice of
the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26,
32 (1st Cir. 2011) ("'[p]erhaps the single most important
prerequisite for the issuance of a preliminary injunction is a
demonstration that if it is not granted the applicant is likely
to suffer irreparable harm before a decision on the merits can
be rendered'" (citation omitted)); see also Asociación de
Periodistas de P.R. v. Mueller, 680 F.3d 70, 84-85 (1st Cir.
2012) ("when the incident now lies in the past, there must be a
'real and immediate threat' of future legal violations rather

than an abstract or conjectural one" (citation omitted)).  The
burden of proof is on the movant.  See Esso Std. Oil Co. v.
Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006).


II.  Motion for Preliminary Injunction (Doc. No. 12)

    In his first motion for a preliminary injunction (Doc. No.
12), Larkin seeks an order:

- enjoining the enforcement of SCDOC policies that prohibit
  him from receiving printed publications through the mail
  and possessing such printed publications (Claim 1);

- enjoining the enforcement of SCDOC policies that prohibit
  him from receiving personal mail and photographs from any
  source (Claim 2);

- requiring the SCDOC to provide him and other inmates with
  notice and an opportunity to be heard before rejecting or
  withholding their incoming mail (Claim 3);

- enjoining the SCDOC practice of destroying original legal
  mail, court mail, and other privileged mail documents and
  only giving inmates copies of those documents (Claim 4);
  and

- enjoining the SCDOC from inspecting any flash drives sent
  to Larkin by his attorney outside of Larkin's presence
  (Claim 5).

Before determining whether to hold an evidentiary hearing on
Larkin's requests for preliminary injunctive relief, the court
concludes that it is appropriate to provide defendants with an
opportunity to respond to the claims and to Larkin's motion for
a preliminary injunction.  Accordingly, in the Order issued this
date, the court grants defendants the opportunity to so respond.


III. Motion for Return of Computer (Doc. No. 14)

Plaintiff alleges that he was denied access to a laptop on
his housing unit for a period of time after March 23, 2019.
Filings submitted by plaintiff since that date indicate that
plaintiff had access to a computer in April 2019.  Nothing in
the record before this court suggests that injunctive relief is
required at this time to avoid irreparable harm to the
plaintiff, with respect to the temporary restrictions on his
laptop access.  Furthermore, for reasons stated in this R&R,
plaintiff has not stated a federal claim upon which relief can
be granted, arising from his allegations regarding lack of
access to the laptop.  Thus, plaintiff has failed to show any
likelihood of success on the merits of the claims underlying his
request for such access.  Accordingly, the district judge should
deny the motion for return of the computer (Doc. No. 14),
without prejudice to plaintiff's ability to file a similar
motion should a change in his circumstances so warrant.

## Conclusion

For the foregoing reasons, the district judge should dismiss Claims 2(b), 4, 5, 6(a), 6(b), 6(c), and 7, as identified in this R&R, and drop defendants Hayden, Weisgarber, Sheriff Dubois, and County Commissioners; additionally, the district judge should deny plaintiff's motion for return of the computer (Doc. No. 14) without prejudice, and deny as moot the motion to add names of the County Commissioners (Doc. No. 15).

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Failure to file objections within the specified time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

Andrea K. Johnstone
United States Magistrate Judge

June 10, 2019

cc:  Michael L. Larkin, pro se