UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Michael L. Larkin

    v.                              Case No. 19-cv-102-LM

Strafford County Department
of Corrections Superintendent
Christopher Brackett et al.[1]

**REPORT AND RECOMMENDATION**

    Plaintiff, Michael L. Larkin, has filed in this case:

- a motion (Doc. No. 21) to supplement the complaint, seeking to add a new claim of interference with Larkin's mail and claim relating to the recreational library;

- a motion (Doc. No. 22) to amend the complaint, seeking to add new allegations to resurrect two claims that were asserted in his initial pleadings, previously numbered by the court as Claims 2(b) and 5, which the court had dismissed for failure to state a claim, see

---

[1] Defendants who have been served in this action are Strafford County Department of Corrections ("SCDOC") Superintendent Christopher Brackett and Strafford County. For reasons stated in this Report and Recommendation, the court has issued an Order this date directing service of a summons upon new defendants SCDOC Assistant Superintendent Capt. Jake Collins and SCDOC Captain of Security Robert Hayden. The remaining defendants named in Larkin's initial pleadings have been dropped from this action.

>   Sept. 25, 2019 Order (Doc. No. 40) (approving June 10, 2019 Report and Recommendation ("June 10 R&R") (Doc. No. 19)); and
>
> - a proposed supplemental/amended complaint (Doc. No. 28), asserting a claim, numbered below as "Claim 10," alleging that defendants, including Strafford County Department of Corrections ("SCDOC") Officer Daniels, violated Larkin's First Amendment rights by denying him access to books that were in the SCDOC recreational library.

Those filings are before the court for preliminary review pursuant to 28 U.S.C. § 1915A and LR 4.3(d)(1).  In conducting its preliminary review of Larkin's amended and supplemental pleadings, the court uses the standard set forth in the June 10 R&R, see Doc. No. 19, at 2-3.

## Background

I.  Larkin's Status

At all times relevant to this action, Larkin has been incarcerated at the SCDOC.  Between 2018, and ending sometime in August 2019, Larkin was a federal inmate at the SCDOC in connection with a criminal case pending in the District of Maine.  Since August 16, 2019, Larkin has been held at the SCDOC as a pretrial detainee, pursuant to orders issued in connection

with an extradition proceeding, arising out of a fugitive-from-justice warrant and detainer issued by Massachusetts, see State v. Larkin, No. 432-2019-cr-01936, (N.H. Cir. Ct., 7th Cir.-Dist. Div.-Dover); State v. Larkin, No. 219-2019-cv-00516 (N.H. Super. Ct., Strafford Cty.).

II.   Claims That Have Been Served

The court conducted its preliminary review of Larkin's initial pleadings (Doc. Nos. 1, 12, 13, 14) and allowed Claims 1, 2(a), and 3, as identified in the June 10 R&R (see Doc. No. 19), to be served in this action.  The claims that the court dismissed in approving the June 10 R&R included Claims 2(b) and 5.  See Sept. 25, 2019 Order (Doc. No. 40) (approving June 10 R&R (Doc. No. 19)).

## Discussion

I.   New Allegations Relating to Claim 2(b)

Document No. 22 alleges additional facts relating to Claim 2(b), which this court previously summarized as follows:

> 2.   The SCDOC policy that prohibits Larkin and other inmates from receiving personal letters or photos through the mail:
>
> . . .
>
>> b.   Violates Larkin's Fourteenth Amendment right to equal protection, in that the restriction on the receipt of personal mail does not apply to Immigration

3

and Customs Enforcement ("ICE") detainees held at the
SCDOC.

This court dismissed Claim 2(b) when it completed its preliminary review of Larkin's initial pleadings as it did not appear from the facts alleged that ICE detainees and Larkin were similarly situated in all relevant respects.

> In determining whether two groups are similarly situated, we have identified the somewhat imprecise test as "whether a prudent person, looking objectively . . . would think them roughly equivalent." Put differently, "the proponent of the equal protection violation must show that the parties with whom he seeks to be compared have engaged in the same activity vis-à-vis the government entity without such distinguishing or mitigating circumstances as would render the comparison inutile."

Bruns v. Mayhew, 750 F.3d 61, 65-66 (1st Cir. 2014).

Larkin has pleaded additional facts in Document No. 22 that, taken as true, indicate that ICE detainees and other inmates are comingled in the facility, and that ICE detainees include many inmates with a history of drug crime convictions. The fact remains, however, that Larkin and ICE detainees are not similarly-situated with respect to their relationship with the SCDOC in one relevant respect: ICE detainees are housed at the SCDOC pursuant to an agreement with ICE, while Larkin is not. Strafford County's agreement with ICE imposes requirements that apply only to ICE detainees, which Strafford County agreed to implement in order to secure the benefit of its bargain with ICE.  Larkin, like many other SCDOC inmates, is not housed at

the SCDOC pursuant to the terms of that agreement.  There is a rational basis for distributing mail to ICE detainees in a manner that would implement the requirements of the SCDOC's ICE contract, while saving those mail processing or delivery resources with respect to other inmates whose conditions of confinement are not governed by that contract.

   Larkin argues that since the distinction between him and ICE detainees turns on their alienage and his citizenship, the difference in how the SCDOC handles ICE mail versus other inmate mail must be subjected to strict scrutiny.  Cf. Bruns, 750 F.3d at 66 ("the otherwise 'valid interest [of states] in preserving the fiscal integrity of [state] programs' is generally insufficient grounds for a state-imposed burden on alienage to survive an equal protection challenge" (citation omitted)).  The problem with Larkin's argument, however, is his failure to allege facts to state a claim that the mail of non-citizen SCDOC inmates who aren't ICE detainees is handled like the mail of ICE detainees and unlike Larkin's.  In the absence of that allegation, and lacking a suggestion in the pleadings that the SCDOC otherwise uses an inmate's federal or state grounds for detention or incarceration as markers of alienage or citizenship, Larkin has failed to allege facts to state a claim that similarly-situated inmates are treated differently in a manner that violates the Equal Protection Clause of the

5

Fourteenth Amendment.  Accordingly, the district judge should deny as futile Larkin's motion to add Claim 2(b) to this action, and Claim 2(b) should remain dismissed from this case.

II.   New Allegations Relating to Claim 5

New allegations in Document Nos. 21 and 22 relate to Claim 5, as numbered in the June 10 R&R, which the court previously summarized as follows:

> 5.   The conduct of SCDOC officers in inspecting one or more flash drives sent to Larkin as legal mail from his criminal attorney violated Larkin's right to counsel under the Sixth Amendment, as such inspections occurred outside of Larkin's presence, without his consent, and unjustifiably interfered with confidential communications between Larkin and his criminal defense counsel.

The court dismissed Claim 5 following its preliminary review of Larkin's initial pleadings, as Larkin had not pleaded facts regarding the manner and frequency of the inspection of his flash drives that would state a claim of a violation of his Sixth Amendment rights.  Document Nos. 21 and 22 add new allegations relating to those issues, regarding the existence of an established policy or practice implemented by SCDOC officers, including Capt. Jake Collins.  Pursuant to that policy, Capt. Collins has twice opened flash-drives from Larkin's attorney, outside of Larkin's presence.  Larkin alleges that the implementation of that established policy and practice chilled his ability to communicate freely by mail with his attorney.

6

The court concludes that Larkin's allegations relating to Claim 5 presently survive preliminary review. The district judge, therefore, should grant the motions docketed as Document Nos. 21 and 22 to the extent that they seek to assert new allegations in support of Claim 5, to join new defendant SCDOC Capt. Jake Collins, and to require defendants to file their answer or other response to that claim. In the Order issued this date, the court has directed defendants including new defendant Capt. Jake Collins to respond to Claim 5 and the pertinent allegations in Document Nos. 21 and 22.

III. New Allegations in Document Nos. 21 and 28

    A.   List of New Claims

In Document Nos. 21 and/or 28, Larkin alleges new facts and seeks to add new claims to this action. The court summarizes those new allegations and numbers those new claims seeking relief including damages and/or injunctive relief, as Claims 8, 9, 10, and 11:

> 8.   The conduct of SCDOC officers in inspecting the contents of "court mail" sent to Larkin outside of Larkin's presence:
>
>     a.   Violated SCDOC policies;
>
>     b.   Violated Larkin's right to confidentiality in correspondence from the courts; and
>
>     c.   Violated Larkin's rights as the inspection of court mail was undertaken in retaliation for Larkin's

7

>
> exercise of his First Amendment rights to petition the government for redress of grievances and to send and receive correspondence while incarcerated.
>
> 9. The SCDOC practice of retaining an electronic copy on the photocopier hard-drive of the originals of court mail, legal mail, and other types of mail considered by SCDOC policies to be "privileged mail," has violated Larkin's federal rights.
>
> 10. SCDOC officers, including SCDOC Officer Daniels, have violated Larkin's First Amendment rights by denying Larkin access to books that had been previously made available to inmates as part of the facility's recreational library.
>
> 11. SCDOC officers are liable to Larkin, with respect to matters alleged in relation to Claim 10, for:
>
>> a. Treating Larkin differently than other inmates in facilities operated by the New Hampshire Department of Corrections and other county correctional departments;
>>
>> b. Engaging in criminal conduct;
>>
>> c. Conspiring to deprive Larkin of his civil rights and privileges, in violation of 42 U.S.C. §§ 1983, 1985(3);
>>
>> d. Intentionally and/or negligently inflicting emotional distress upon Larkin; and
>>
>> e. Violating the Code of Federal Regulations, unspecified state laws, the New Hampshire Constitution, state administrative regulations, and "Department of Corrections" rules and policies.

B. <u>Claim 8</u>

The premise of Claim 8 and its subparts as alleged in Document No. 21 and summarized herein is that Larkin has a right to enforce SCDOC regulations through section 1983 and a general right to prevent defendants from opening and inspecting incoming

8

mail form the courts outside of his presence. In general, however, inmates may not base a claim arising under section 1983 on prison officials' failure to comply with prison policies, see McFaul v. Valenzuela, 684 F.3d 564, 579 (5th Cir. 2012) ("[a]n assertion that prison officials failed to follow prison rules or policies does not set forth a constitutional claim"), and litigants have no right to privacy in the contents of public rulings issued by, and non-confidential correspondence from, the courts, see Martin v. Brewer, 830 F.2d 76, 78 (7th Cir. 1987) ("with minute and irrelevant exceptions all correspondence from a court to a litigant is a public document, which prison personnel could if they want inspect in the court's files"). Nothing that this court has sent to Larkin has been sealed or removed from the public docket, and Larkin has alleged no facts suggesting that any other court mail at issue has been sealed and is not otherwise part of the public record.

Furthermore, an inmate alleging a claim of retaliation for engaging in conduct protected by the First Amendment must point to the existence of some adverse act taken in response to his exercise of such rights, which could deter an inmate of ordinary firmness from engaging in First Amendment activities. See Starr v. Dube, 334 F. App'x 341, 342 (1st Cir. 2009). An inmate of ordinary firmness would not be deterred from filing a court case or sending and receiving court mail by the prospect that prison

9

officials would review the contents of non-confidential mail sent by the court to the inmate, as such correspondence is a matter of public record. Accordingly, Larkin's allegations concerning the SCDOC's opening of letters from courts addressed to Larkin do not state a First Amendment retaliation claim upon which relief can be granted. Accordingly, the district judge should deny, in part, Larkin's motion to amend (Doc. No. 21), as futile, to the extent he seeks to add Claim 8 and its subparts to this action.

### C. Claim 9

In Claim 9, Larkin asserts that defendants have violated his federal rights by retaining a copy of letters that the SCDOC has defined as "privileged mail" on the hard-drive of an SCDOC photocopier, in conjunction with a mail processing procedure that directs officers to photocopy such correspondence before providing a photocopy to the inmate, and then shredding the original, in lieu of delivering the original to the inmate.

#### 1. Court Mail

In general, court mail is a matter of public record and its inspection and retention does not violate an inmate's federal rights. See Martin, 830 F.2d at 78. Larkin has not demonstrated that the retention of a copy of his court mail has

10

caused him any actual injury in violation of his right of access to the courts, cf. Lewis v. Casey, 518 U.S. 343, 351 (1996), or that it has otherwise violated any of his federal rights, Anctil v. Fitzpatrick, No. 1:16-CV-00107-JAW, 2018 WL 6579153, at *13, 2018 U.S. Dist. LEXIS 210121, at *35 (D. Me. Dec. 13, 2018) (inmate's receipt of "mail from the courts that was previously opened, or was read to him by a member of staff, does not establish a constitutional violation"), R&R adopted, No. 1:16-CV-00107-JAW, 2019 WL 501467, 2019 U.S. Dist. LEXIS 20558 (D. Me. Feb. 8, 2019).

    2.    <u>Attorney Correspondence</u>

Courts have afforded greater protection to incoming mail from attorneys than to other types of incoming mail, because such mail may impact "'prisoner's legal rights, the attorney-client privilege, or the right of access to the courts.'" Donovan v. Magnusson, No. Civ. 04-102-B-W, 2005 WL 757585, at *10 n.17, 2005 U.S. Dist. LEXIS 9756, at *36 n.17 (D. Me. Mar. 11, 2005) (quoting Sallier v. Brooks, 343 F.3d 868, 874 (6th Cir. 2003)).  The Sixth Amendment does not prevent prison officials from inspecting legal mail to the extent necessary to preserve institutional security, but it does require that the officials do so while "preserving the inmates' expectation of attorney-client confidentiality, such as by opening attorney

11

communications in the presence of the inmate so that the inmate can be sure the inspection does not include reading the communication." Hudson v. O'Brien, No. CIV.A. 09-10276-RWS, 2010 WL 2900529, at *2, 2010 U.S. Dist. LEXIS 73683, at *7 (D. Mass. July 21, 2010). An inmate must demonstrate that prison officials "'regularly and unjustifiably interfered with the incoming legal mail.'" Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) (citation omitted). "Negligent interference with legal mail is not actionable under section 1983." Murphy v. Grenier, 406 F. App'x 972, 976 (6th Cir. 2011); Conway v. Jackson, No. 5:10CV00225 JLH-BD, 2010 WL 3547226, at *2, 2010 U.S. Dist. LEXIS 93100, at *4 (E.D. Ark. Aug. 16, 2010) (isolated incident of jail official opening inmate's legal mail outside of inmate's presence does not give rise to liability "without evidence of improper motive" or injury resulting), R&R adopted, 2010 WL 3547225, 2010 U.S. Dist. LEXIS 93010 (E.D. Ark. Sept. 7, 2010).

As to any confidential correspondence from his criminal attorney that has remained in the photocopier's hard-drive, Larkin has not alleged facts suggesting that the electronic copies at issue have been or were regularly and improperly opened and read outside of his presence. Larkin has not otherwise pleaded any facts suggesting that his communications with his counsel in his criminal case have been affected by the

12

documents on the photocopier's hard-drive.  Accordingly, Claim 9, to that extent, fails to state a claim upon which relief can be granted, and the motion to add that claim should be denied to that extent as futile.

### 3.  Other "Privileged Correspondence"

Larkin has not pleaded any facts regarding the nature of any other "privileged" letters that have been retained on the SCDOC photocopier, or defendants' access to such hard-drive data, which would suggest that defendants have violated any of his federal rights relating to such correspondence.  Without more, Larkin's allegations regarding the data retained in the photocopier's hard-drive do not state any claim upon which relief can be granted under section 1983.  Accordingly, the district judge should deny Document No. 21, in part, as futile, to the extent that motion seeks to add Claim 9 to this case.

## D.  Claim 10

Document Nos. 21 and 28 add new allegations to this case in support of a claim that defendants have violated Larkin's rights: by closing the SCDOC's recreational library and disposing of thousands of books, and by denying Larkin access to any recreational reading material that was previously made available to him.  Larkin alleges specific facts regarding SCDOC

13

Officer Daniels's conduct in denying Larkin access to such books, and the supervisory defendants' failure to address Larkin's complaints regarding that conduct. Larkin asserts that the elimination of the recreational library and the incomplete or ineffective transition to e-books through tablets distributed to SCDOC inmates has violated and continues to violate his rights under the First Amendment.

Although the court is troubled by the allegation that the SCDOC has converted library space into a store for vending junk food and soda, the U.S. Constitution does not guarantee inmates access to a library of novels or other favorite reading materials in the format an inmate prefers. The removal of books from a prison's library can raise First Amendment concerns, however, when books that inmates previously could obtain are no longer available to them in any form. See Cline v. Fox, 319 F. Supp. 2d 685, 690-91 (N.D.W. Va. 2004) ("a prison's selective removal of library books restricts an inmate's right to receive information"). This court notes, in that regard, that Claim 10 is properly analyzed with due deference to prison officials' professional judgment regarding matters relating to prison security, and with reference to the Turner factors, cf. Overton v. Bazzetta, 539 U.S. 126, 132 (2003); Turner v. Safley, 482 U.S. 78, 89-91 (1987). At this stage of the case, however, Larkin's allegations about the complete closure of the

14

recreational library and the incomplete and/or ineffective transition to e-books raise questions about whether defendants' denial of Larkin's access to books that were previously available to him is an exaggerated response to the facility's legitimate penological interests.  Accordingly, in the Order issued this date, the court has directed defendants including SCDOC Officer Daniels to file an answer or other response to Document Nos. 21 and 28 with respect to Claim 10 (above).

    E.    Claim 11

Claim 11 summarizes the remaining legal theories cited by Larkin in Document No. 28, see Doc. No. 28, at 9-12, which do not give rise to any claims that survive preliminary review. Claim 11(a) fails to state a claim upon which relief can be granted as defendants are not responsible for the conditions that may be present in facilities the SCDOC does not operate. Claim 11(b) does not state an actionable claim as a "private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another," Linda R. S. v. Richard D., 410 U.S. 614, 619 (1973).  Claim 11(c) fails to state a claim upon which relief can be granted, as the civil rights conspiracy claim is conclusory, and Larkin has not alleged that he has suffered any racial or other invidious, class-based discrimination.  See Boyle v. Barnstable Police

15

Dep't, 818 F. Supp. 2d 284, 318 (D. Mass. 2011) (to state a claim under section 1985(3), "a plaintiff must assert (a) racial or class-based discrimination; and (b) interference with a federally protected right," and plaintiff's conspiracy claim must have factual support).

Claim 11(d) also does not state an actionable claim as plaintiff has failed to allege any non-conclusory facts regarding the severity or impact of any emotional distress he has suffered. See Tessier v. Rockefeller, 162 N.H. 324, 342, 33 A.3d 1118, 1132 (2011); Morancy v. Morancy, 134 N.H. 493, 496, 593 A.2d 1158, 1160 (1991). And Claim 11(e), encapsulating Larkin's nonspecific references to the Code of Federal Regulations, the state constitution, the revised and annotated compilation of state statutes, the state's body of administrative rules, and unspecified state or county correctional regulations and policies, without more, is a legal conclusion that fails to show that plaintiff has any private right of action or actionable claim for the relief he seeks, arising from those authorities.

## Conclusion

For the foregoing reasons, the magistrate judge recommends as follows:

    1.    The district judge should deny the motions

docketed as Document Nos. 21 and 22 in all respects, except to the extent that: Capt. Jake Collins and SCDOC Officer Daniels are joined as defendants to this action; and Claims 5 and 10 (set forth above) are allowed to proceed in this action, pursuant to the Order issued simultaneously with this Report and Recommendation.

    2.   The district judge should specifically deny as futile Larkin's motions to amend/supplement and the (proposed) amended or supplemented complaint (Doc. Nos. 21, 22, 28), to the extent that, through those filings, plaintiff seeks to revive or add Claims 2(b), 8, 9, and 11 to this case, or join any new defendants other than Capt. Collins and Officer Daniels.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Failure to file objections within the specified time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

                                          _/s/ Andrea K. Johnstone_
                                          Andrea K. Johnstone
                                          United States Magistrate Judge

January 24, 2020

cc:   Michael L. Larkin, pro se
       Christine Friedman, Esq.